UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK MAUS,

         Plaintiff,

     v.

HYUNDAI MOTOR AMERICA,

         Defendant.

Case No. 25-cv-07937-HSG

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 12

Pending before the Court is Defendant's motion to compel arbitration. Dkt. No. 12 ("Mot."); Dkt. No. 13 ("Opp."); Dkt. No. 14 ("Reply"). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS** Defendant's motion to compel arbitration.

## I.    BACKGROUND

In August 2025, Plaintiff Mark Maus filed a complaint against Defendant Hyundai Motor America alleging that Defendant sold Plaintiff a vehicle "with serious defects and nonconformities to warranty." *See* Dkt. No. 1-1, Ex. A ¶ 8. Plaintiff brings claims for violation of the Magnuson-Moss Warranty Act ("MMWA"), breach of express warranty under the California Commercial Code, and breach of warranty. *Id.* ¶¶ 9–42. Defendant removed, Dkt. No. 1, and moved to compel arbitration and stay the action pending arbitration, *see* Mot.

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, sets forth a policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (noting federal policy favoring arbitration); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460

U.S. 1, 24 (1983) (same).  The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  This federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate."  *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).  Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration."  *Id.*

When a party moves to compel arbitration, the court must determine (1) "whether a valid arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  The agreement may also delegate gateway issues to an arbitrator, in which case the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  In either instance, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citing 9 U.S.C. § 2).

## III.   DISCUSSION

Defendant contends that Plaintiff agreed to arbitrate this dispute and delegate threshold questions of arbitrability to an arbitrator when he purchased his Hyundai vehicle and enrolled in Bluelink, a connected car services technology.  Mot. at 6.  Plaintiff argues that no agreement to arbitrate was formed, the arbitration clause is unconscionable, and MMWA claims cannot be subject to binding, pre-dispute arbitration.  Opp. at 5.

### A.   Formation of Agreement to Arbitrate

The party seeking to compel arbitration bears the burden of proving the existence of the agreement by a preponderance of the evidence.  *See Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).  In determining whether an agreement was formed, the Court applies "general state-law principles of contract interpretation," without a presumption in favor of arbitrability.  *See Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014)

United States District Court
Northern District of California

United States District Court
Northern District of California

(quotation omitted).  Under California law, a viable contract requires: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration.  *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999).[1]  "[I]f a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed."  *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (applying California law).

Defendant argues that Plaintiff agreed to arbitration when he enrolled his new Hyundai Ioniq in Bluelink in March 2022 and agreed to the "Terms & Conditions" in Hyundai's Connected Services Agreement ("CSA").  Mot. at 7.  That contract contained an arbitration agreement under which Plaintiff agreed to arbitrate all disputes and claims against Defendant arising out of or relating to the Bluelink agreement or Plaintiff's new vehicle:

> Hyundai and you agree to arbitrate any and all disputes and claims between us arising out of or relating to this Agreement, Connected Services, Connected Services Systems, Service Plans, your Vehicle, use of the sites, or products, services, or programs you purchase, enroll in or seek product/service support for, whether you are a Visitor or Customer, via the sites or through mobile application, except any disputes or claims which under governing law are not subject to arbitration, to the maximum extent permitted by applicable law. . . . The agreement to arbitrate otherwise includes, but is not limited to: claims based in contract, tort, warranty, statute, fraud, misrepresentation[,] or any other legal theory . . . .

*See* Dkt. No. 12-6 at 11.

Defendant claims that Plaintiff enrolled in Bluelink through "a process known as Dealer-Assisted Enrollment," where a car dealer accesses a web portal "on a dealer-owned computer device, like a tablet, and helps create a customer account for the new Bluelink enrollee."  Mot. at 7–8; Dkt. No. 12-4 ("Rao Decl.") ¶¶ 7–8.  During this process, "the dealer employee hands control of the computer device to the customer so the customer can enter additional information and review and accept the Bluelink Terms & Conditions."  Mot. at 8; Rao Decl. ¶¶ 8–10.

---

[1] Plaintiff apparently purchased his vehicle and signed the relevant contract in Colorado, Dkt. No. 12-4 ¶ 4, though the contract contains a clause stating that "this Agreement and any disputes arising out of or relating to it will be governed by the laws of the state of California without regard to its conflict of law principles," Dkt. No. 12-6 at 10.  The parties both apply California law, Mot. at 11; Opp. at 5, so the Court does as well, though it makes no difference whether the Court applies Colorado or California law in this straightforward case.

Defendant introduces evidence that Plaintiff had to check a box that he "read and agree[d] to the Blue Link Terms & Conditions" and select the "Complete" button. Rao Decl. ¶¶ 10–14; *see also* Dkt. No. 12-7 (showing user interface). Defendant submits a declaration attesting that customers "cannot activate Bluelink services through the [dealer-assisted] process" unless they complete these steps, and they may choose not to accept the terms and decline enrollment in Bluelink services. Mot. at 8 (citing Rao Decl. ¶¶ 11–12). Defendant argues that this was sufficient to provide clear notice of the terms of use, and that by checking the box, Plaintiff manifested his assent. Mot. at 12–14.

The Court finds that Defendant has met its burden of proving the existence of an agreement to arbitrate. Here, the Terms & Conditions hyperlink was "conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent," *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023), and a checkbox to manifest assent with the terms was located directly above the "Complete" button, *cf. In re Tesla Advanced Driver Assistance Sys. Litig.*, No. 22-CV-05240-HSG, 2023 WL 6391477, at *4 (N.D. Cal. Sept. 30, 2023) (finding "hybrid browsewrap agreements where the terms of the agreement [were] hyperlinked above the [submission] button" were enforceable contracts). Courts confronting similar facts about Bluelink have found a valid arbitration agreement. *See Maranda v. Hyundai Motor Am., Inc.*, No. 8:22-CV-02193-JVS-JDEX, 2023 WL 6474450, at *5–*9 (C.D. Cal. Oct. 2, 2023); *Gould v. Hyundai Motor Co.*, No. 8:23-CV-01344-JWH-DFM, 2025 WL 26806, at *8–*10 (C.D. Cal. Jan. 3, 2025); *Franz v. Hyundai Motor Am.*, No. 8:23-CV-01640-NS-ADS, 2024 WL 176227, at *7 (C.D. Cal. Jan. 12, 2024).

Plaintiff argues that he "could not have knowingly agreed to arbitrate any claims against [D]efendant, as the arbitration clause was not disclosed at the time he agreed to purchase the vehicle and received the written warranty." Opp. at 5. He claims that the clause was "buried in some electronic form that was completed through a dealership," "there is no evidence that [Plaintiff] even knew there was a hyperlink he needed to click on to read," and "there is no evidence that the 12 pages of dense legalese called 'Terms & Conditions' would even be reasonably legible on a tablet." *Id.* He further claims that "Defendant has offered no evidence

4

that the Bluelink enrollment form was even completed by Mr. Maus, as opposed to someone from the dealer." *Id.*

But Plaintiff ignores Defendant's evidence that (1) customers must affirmatively mark their agreement with the CSA in order to enroll in Bluelink, Rao Decl. ¶¶ 6, 11; (2) dealers are trained to hand the tablet to customers and to review and accept the Terms & Conditions and are reminded to do so by on-screen prompts, *id.* ¶¶ 8–9; and (3) Plaintiff enrolled in Bluelink, as confirmed by Rao's review of Hyundai's internal database, *id.* ¶¶ 7, 17–18; Dkt. No. 12-5 (showing database entry). Plaintiff likewise ignores Defendant's evidence of what the user interface and contract actually looked like. As the non-moving party, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (applying summary judgment standard to motion to compel arbitration). Plaintiff has not met this burden, as he notably does not introduce *any* competing evidence or even directly deny that he completed the Bluelink enrollment form. *Cf. Franz*, 2024 WL 176227, at *5 (finding no genuine dispute of material fact where plaintiff "did not submit any supporting evidence for his arguments disputing whether an agreement to arbitrate exists"); *Bryant v. JPMorgan Chase Bank, N.A.*, 763 F. Supp. 3d 946, 950 (C.D. Cal. 2025) (noting that "Plaintiff does nothing to create a genuine issue of material fact as to the existence of an agreement" where he did "not assert that he did not sign up for" the product and did "not provide[] a sworn affidavit contesting any aspect of [the opposing] declaration").

Plaintiff "strenuously objects to the [Rao] declaration because the declarant lacks personal knowledge and merely offers conjecture." Opp. at 5. "Personal knowledge may be inferred from a declarant's position" and declarant testimony, even where purportedly "self-serving." *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000). Rao has plainly established personal knowledge, since he was Defendant's Director of Connected Ops & Owner Apps/Web from January 2022 (before Plaintiff purchased his vehicle) until the date of his declaration, and he testified that he "administer[ed] activities and processes relating to the Hyundai Bluelink services" in that role. Rao Decl. ¶ 1. He also testified that he is "knowledgeable as to how [Hyundai's affiliate] is able

5

to extract true and correct copies of Connected Services Data . . . at request." *Id.* In light of this evidence and Plaintiff's failure to introduce any competing evidence, there are no "genuine disputes of material fact as to whether the parties formed an arbitration agreement." *Hansen*, 1 F.4th at 672.

### B.    Delegation Clause

Plaintiff argues that the arbitration agreement is unconscionable and cannot be enforced. Opp. at 9–14. Defendant argues that this challenge has been delegated to the arbitrator. Mot. at 14–16. Plaintiff does not address this argument. *See generally* Opp.

Parties to an arbitration agreement "can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "[W]hether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)) (emphasis omitted). The Supreme Court has clarified:

> When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

*Henry Schein*, 586 U.S. at 68.

The Court agrees that there is clear and unmistakable evidence of an agreement to arbitrate arbitrability. The arbitration agreement states that "[a]ll issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision . . . , and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision[.]" Dkt. No. 12-6 at 11. Even if this language was not clear enough on its own to delegate issues of arbitrability, the agreement also states that the arbitration is governed by the rules of the AAA. *Id.* ("The arbitration will be governed by the Consumer Arbitration

United States District Court
Northern District of California

Rules . . . of the American Arbitration Association . . . .").  The AAA Commercial Arbitration Rules, in turn, provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  *See* AAA Commercial Arbitration Rules and Mediation Procedures R-7(a).[2]  The Ninth Circuit has explicitly held that incorporation of the AAA rules can constitute clear and unmistakable delegation of the arbitrability question.  *Brennan*, 796 F.3d at 1130.  The Court therefore finds that the parties' arbitration agreement expressly delegates questions of the arbitrability of any dispute to the arbitrator.  Other cases involving Bluelink have found the same.  *See, e.g.*, *Nunn v. Hyundai Motor Am.*, No. 8:25-CV-01091-JVS-KES, 2025 WL 2683990, at *5 (C.D. Cal. Aug. 28, 2025).[3]

As such, the Court does not consider Plaintiff's argument that the arbitration agreement is unconscionable, since that issue has been delegated to the arbitrator, and Plaintiff does not specifically challenge the delegation provision.  *Rent-A-Center*, 561 U.S. at 72 (declining to reach unconscionability argument: "Accordingly, *unless [plaintiff] challenged the delegation provision specifically*, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." (emphasis added)); *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) (requiring that "a party resisting arbitration must mention that it is challenging the delegation provision and make specific argument attacking the provision in its opposition to a motion to compel arbitration").

---

[2] *See* American Arbitration Association, https://www.adr.org/media/qielmf0g/2025_commercialrules_web.pdf (last visited April 10, 2026).

[3] After this case was briefed, the Ninth Circuit affirmed in a non-precedential memorandum disposition two district court decisions that had found Hyundai's Bluelink agreement did not clearly and unmistakably delegate threshold questions of arbitrability.  *Hageman* v. *Hyundai Motor Am., Inc.*, 2026 WL 821890 (9th Cir. Mar. 25, 2026).  But the Ninth Circuit held that "the agreement does not clearly and unmistakably delegate threshold arbitrability question to the arbitrator *where the case is a putative class action*" given language stating that "if putative class or representative claims are initially brought by either party in a court of law, and a motion to compel arbitration is brought by any party, then the court shall decide whether this agreement permits class proceedings."  *Id.* at *2 (emphasis added).  Even if the Court considers *Hageman* for its persuasive value, that case is clearly distinguishable: this is not a class action, so this language does not apply.

United States District Court
Northern District of California

United States District Court
Northern District of California

### C.    MMWA Arbitrability

Finally, Plaintiff argues that the Bluelink arbitration clause is not enforceable under the MMWA.  Opp. at 6–8.  As the Court has already observed, the gateway question of "whether [the parties'] agreement covers a particular controversy" like the MMWA claim has been delegated to the arbitrator, as has the enforceability of an agreement to arbitrate such claims.  *See Henry Schein*, 586 U.S. at 68.  The Court "possesses no power to decide the arbitrability issue," even if it "thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless."  *Id.*  "Because the parties agreed to allow the arbitrator to determine questions of arbitrability, including the scope of the matters that are subject to the parties' arbitration agreement, the arbitrator—rather than the court—should determine whether the MMWA alters the scope of arbitrable issues in this case."  *Pagano v. NordicTrack, Inc.*, 749 F. Supp. 3d 1183, 1198 (D. Utah 2024); *Cadena v. Am. Honda Motor Co.*, No. CV 20-511-MWF (PJWX), 2020 WL 3107797, at *8 (C.D. Cal. June 10, 2020) (same).

## IV.    CONCLUSION

The Court **GRANTS** Defendant's motion to compel arbitration and **STAYS** the proceedings.  Dkt. No. 12.  The parties are **DIRECTED** to file a joint status report every 120 days (beginning from the date of this order) discussing the status of the arbitration proceedings.

**IT IS SO ORDERED.**

Dated:    4/10/2026

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

8